COMMERCIAL UNION ASSUR. CO., Ltd., et al. v. PLANTER'S CO-OP. ASS'N OF LONE WOLF.

No. 35191.   Nov. 12, 1952.

Rehearing Denied Jan. 6, 1953.

*252 P. 2d 146.*

Rittenhouse, Hanson & Evans, Oklahoma City, for plaintiffs in error.

Carder & Carder, Hobart, for defendant in error.

GIBSON, J.   The parties will be given their trial court designations. Defendant in error was plaintiff, and plaintiffs in error were defendants.

Each defendant issued a separate insurance policy to plaintiff covering the same property, 63 bales of cotton, and

both policies were issued on December 18, 1949. The policy terms were for 70 days from the policy dates. On or about January 15, 1950, a fire occurred at plaintiff's premises destroying a part of its cotton. The plaintiff promptly reported the fire to defendants' agent, and on January 20, 1950, defendants, by letters, in evidence, referred the loss to General Adjustment Company of Oklahoma City for adjustment. D. L. Martin was designated as adjuster, and he went to Lone Wolf and conferred with plaintiff's manager.

As required in the policies, plaintiff furnished an invoice of all cotton involved in the fire. Following an inspection plaintiff's manager and the adjuster agreed that 14 bales of the cotton were a total loss and 49 bales had a loss of 33 1/3%. They discussed the salvage of the unburned cotton. The manager testified that the only method of salvaging known to plaintiff was to have the cotton reconditioned and rebaled at a regin plant and the nearest plant affording such facilities was at Chickasha, Oklahoma, approximately 50 miles distant. He further testified that it was definitely his understanding of the agreement of the parties that the cotton was to be salvaged. The adjuster testified that he told the manager that it would be satisfactory for the Chickasha plant to regin and rebale the cotton.

Later, and about 10 days following the fire, the 49 bales were loaded upon two trucks for shipment to the plant at Chickasha. When about three miles from Lone Wolf a fire broke out in the cotton on one truck and that cotton was totally destroyed. 21 bales on the second truck arrived at Chickasha and three days later it was burned and damaged when a fire occurred at that plant.

In their pleadings and at the trial defendants tendered the sum of $1,014.61 covering the admitted loss under the first fire, and at the conclusion of the trial moved that judgment be rendered for that amount as the full extent of their liability. The motion was overruled, and judgment was rendered for plaintiff for the loss in all three fires, as prayed. Defendants thereupon appealed.

In consideration of a recited premium admittedly received, the policy of each defendant insured plaintiff to an amount not exceeding $2,500, "against all direct loss by fire, lightning and by removal from the premises endangered by the perils insured against in this policy, except as hereinafter provided, to the property described hereafter while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against, but not elsewhere."

Defendants admit execution and delivery of the policies; receipt of premiums therefor; the first fire and loss there sustained, which each defendant asserted to be in the sum of $1,014.61, Each defendant denied that any other loss sustained by plaintiff was within the coverage of its policy.

The sole contention of defendants here is that the last two fires did not occur and the losses caused by such fires were not sustained by destruction of the property at the place named in the contract.

Defendants cite American Cent. Ins. Co. v. Boyle, 69 Okla. 195, 171 P. 714, and Aetna Ins. Co. v. Hughes, 120 Okla. 7, 249 P. 908, wherein it was held that a petition on a fire insurance policy should allege that the property was in the place described in the policy at the time of the fire.

The petition in the instant case was more nearly similar to that filed in Fire Association of Philadelphia v. Correll, 157 Okla. 292, 10 P. 2d 686, also cited, wherein it was held that a petition alleging ownership of the goods and destruction thereof and that the insured had performed all conditions of the policy, warranted an inference that

the property destroyed was located in the building described in the policy and was sufficient as against a general demurrer.

However, if it be conceded that the general rule is to the effect that where a policy insures against loss of goods by fire, at a designated place, it is necessary to prove such facts, as contended by defendants, the instant case presents additional problems as to the second and third fires. It is contended that the initial loss was occasioned by a fire at the place designated in the policy.

It is the contention of plaintiff that the removal of the property was pursuant to its genuine desire to save the property from further destruction or deterioration, in conformity with other provisions of the policy requiring plaintiff to so act, and that the removal was not only with the acquiescence and approval of defendants but was pursuant to an agreement between plaintiff and defendants' adjuster to salvage the damaged cotton. Plaintiff says that there is a mandatory provision in the policies which required the insured, in case of loss, to protect the property from further damage, which, in the event of this character of fire, would require a removal of the property to the end that there could be the greatest possible salvage.

The policies contain many provisions, one of which reads:

"Requirements in case loss occurs. The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed, * * *."

The performance of the things required of the insured in the foregoing section of the policies contemplates acts necessary in the conservation and salvage of the property. If the performance of such acts, under one section of the policies, requires removal of the property to a place other than that designated in the policies, and such removal is agreed to and acquiesced in by the insurer, then the insurer will be held to have waived compliance with the last mentioned section. Compliance with both of said sections could not be had, in this case, since there were no facilities for salvage of the cotton at plaintiff's gin.

It would be a contradiction of the provisions of the contract, and an unjust interpretation thereof, to require the insured to protect the property from further damage, to separate the damaged and undamaged property and to put the property in the best possible order, under one provision, and then deny the insured the benefit of his compliance therewith under another provision of the contract, because the personal property, in the process of putting it "in the best possible order", was necessarily removed to another location, which was the only place where the property could be properly reconditioned and conserved.

This court has held that damages resulting from efforts made to save property from a fire, by removal, are within the loss covered by a policy against damage by fire. Farmers' & Merchants' Ins. Co. v. Cuff, 29 Okla. 106, 116 P. 435.

"Furthermore, assuming that there is imminent peril to the insured property if not removed or protected, the insured should exert himself to save the property, even though he has not expressly contracted to do so. Thus, it has been held in effect that, even where there is no stipulation as to removal of goods or other efforts to save property, the insured is obligated to act in good faith, and to do all that he can to lighten the burden of probable or possible loss, and to exert himself to save, as far as he reasonably can, the property from threatened destruction; he ought not negligently or carelessly to stand by and permit the destruction of the property by the peril insured against, or the injury or damage to the

property by others, when it is in his power to avert the same by the exercise of ordinary prudence, such as an uninsured man would use under the same circumstances. In fact, it would seem as though failure to take any reasonable steps to save imperiled property would, as a general rule, evidence want of the honesty and good faith which parties to contracts or insurance are presumed to exercise.***" Couch Cyclopedia of Insurance Law, Vol. 5, p. 4469, §1221.

There is no question of the good faith of any of the parties when plaintiff's manager and defendants' adjuster reached an understanding that an effort should be made to salvage the fire-damaged cotton by having it reginned and rebaled at the Chickasha plant. At that time it would appear to any reasonable man, of experience in handling cotton, to be the proper procedure to put the damaged cotton "in the best possible order", as required of plaintiff in the policies.

It was stipulated in the policies that salvaged cotton was subject to disposition of the insurance companies for a period of thirty days, and that the insured could not abandon any part of the insured property to the insurer. Such provisions were for the benefit of the insurers and prevented plaintiff from claiming a total loss until some disposition was made of the damaged cotton, to the end that extent of the loss could be ascertained.

In their conference, on his first visit, defendants' adjuster congratulated plaintiff's manager in having preserved a nice salvage. He was familiar with all facts, known to plaintiff, having a bearing on the feasibility of preserving salvage. He acquiesced in the plan to remove the cotton to Chickasha for purposes of salvage.

"Nor can an insurer set up breach of a removal clause, where its representative or agent, after learning the facts, induces the insured to incur trouble and expense in order to comply with any provisions of the policy." 2 Couch, p. 1706, par. 545.

We believe that, under the facts of this case, defendants cannot be permitted to assert that the cotton must have been destroyed at the place designated in the policies.

All evidence in this case indicates that the two subsequent fires were but continuations of the initial fire. Plaintiff asserts that it is a matter of common knowledge, among those dealing with or handling the commodity, that a bale of cotton, once ignited by fire, may burn on the interior of the bale for an extended time, without manifestation, only to erupt at a later date. There is no evidence, whatsoever, of any intervening cause of the second and third fires. The evidence reasonably supports the conclusion that all of the destroyed cotton burned as a result of ignition in the first fire. The fact that it erupted and became manifest at a place other than the one designated in the policies was the result of a mutual understanding of the parties with reference to its removal. This was for its intended preservation and salvage, not only permitted but required by the terms of the policies.

Judgment affirmed.

HALLEY, V. C. J., and WELCH, CORN, and BINGAMAN, JJ., concur.