176 So.2d 767 (1965)
J. A. HARPER, Plaintiff-Appellee,
v.
PELICAN TRUCKING COMPANY, Inc., Defendant-Appellee.
No. 10394.
Court of Appeal of Louisiana, Second Circuit.
June 16, 1965.
*768 Hendrick & Fant, Shreveport, for Pelican Trucking Co., defendant-appellant and third-party plaintiff-appellee.
Mayer & Smith, Shreveport, for third-party defendant-appellant, Aetna Ins. Co.
James D. Sparks, Monroe, for J. A. Harper.
Thomas & Lordians, Bossier City, for J. B. Fletcher Drilling Co., third-party defendants-appellees.
Simon, Carroll, Fitzgerald & Fraser, Shreveport, for Argonaut Ins. Co. and Argonaut Southwest Ins. Co.
Bodenheimer, Looney & Jones, Shreveport, for Insurance Co. of America, third-party defendant-appellee.
Before HARDY, AYRES and BOLIN, JJ.
HARDY, Judge.
This is an action on account for labor, services and material furnished by plaintiff in connection with a salvage operation performed at the request and for the benefit of defendant, Pelican Trucking Company, Inc. In answer to plaintiff's petition the defendant, Pelican, after denying liability for the account, assumed the position of third party plaintiff and impleaded as third party defendants J. B. Fletcher and his insurer, Argonaut Insurance Company, and Aetna Insurance Company and the Insurance Company of North America, both of whom were insurance carriers for Pelican.
In response to a peremptory exception Argonaut Insurance Company was dismissed as a third party defendant to this action. By judgment after trial on the merits Pelican's third party demands against Fletcher were dismissed. From these judgments eliminating Fletcher and his insurer Argonaut as parties there has been no appeal, and the claims asserted against them are no longer at issue.
*769 The district judge also rendered judgment in favor of plaintiff and against Pelican as prayed for and there has been no appeal from this action.
Judgment was awarded in favor of Pelican as third party plaintiff against Aetna as third party defendant in the identical sum awarded the original plaintiff Harper, and Pelican's rights to claim attorney's fees from Aetna were specifically reserved. From this portion of the judgment Aetna, as third party defendant, has appealed.
Finally, the judgment rejected Pelican's demands against the Insurance Company of North America and from this portion of the judgment both Pelican and Aetna have appealed.
There appears to be no substantial dispute as to the facts. Pelican contracted for the hauling of a drilling rig owned by Fletcher, and in the course of this operation a truck owned by Pelican, towing a trailer owned by Fletcher loaded with the drilling rig drawworks and derrick, was involved in an accident when the truck and trailer fell through the deck of a bridge across Bayou Macon in Madison Parish. The truck, the trailer and the load, having a gross weight of some 80,000 pounds, were left in a precarious position, suspended over the Bayou and apparently supported only by the sub-flooring of the bridge. An authorized representative of Pelican employed the plaintiff, Harper, to remove the truck-trailer and its load from the damaged bridge. The work was performed, Harper submitted a bill to Pelican and upon its refusal to pay instituted this suit.
Third party defendant, Aetna Insurance Company, at the time of the accident was the automobile liability insurer of Pelican under the terms of a physical damage liability insurance policy. As the basis of its third party action against Aetna, Pelican contends that the conditions of the said policy in the event of the occurrence of loss required the insured to protect the insured vehicle from further loss and obligated the insurer to bear the reasonable expenses incurred in connection with such protection.
In answer to the third party petition Aetna denied such liability and affirmatively asserted lack of coverage under the policy of insurance with respect to Pelican's claim. As appellant, Aetna specifies error on the part of the trial court in holding that its policy extended coverage for the salvage operations of the Fletcher trailer, drawworks and derrick. Further error is specified as to the holding that the cargo policy of the Insurance Company of North America did not extend coverage to the salvage operations.
Pelican's claim as third party plaintiff against the Insurance Company of North America is based upon the provisions of a policy of cargo insurance which was effective at the time of the accident in favor of Pelican as a cargo carrier. Pelican, as appellant from the part of the judgment rejecting its demands against the Insurance Company of North America, also specifies error on the part of the trial court in holding that the policy did not extend coverage with respect to the salvage operations.
It is established that Aetna has paid Pelican as its assured for the damages, less the deductible amount provided by the policy, which were actually sustained as the result of collision by the insured truck owned by Pelican.
Although not made a part of Aetna's specifications of error as appellant, and so far as we can determine not covered by its pleadings, counsel for said appellant has argued before this court that Pelican failed to prove the amount of the proportion of the cost of the salvage operations attributable to the rescue of the Pelican truck. In other words, while relying primarily upon the defense of lack of coverage with respect to any and all costs incurred in the salvage operations, counsel appears to present, by argument an alternative contention. In opposition to this argument counsel for *770 Pelican contends that this point was never raised during trial of the case and that no effort was made on behalf of Aetna to establish the cost of the salvage operations which were necessary exclusively for the rescue of the truck.
Our examination of the record fails to disclose any evidence which would support a conclusion that the truck could have been rescued or salvaged independent of, and without relation to, the performance of a similar operation with respect to the trailer and its cargo. We regard such a showing as being essential for the purpose of establishing a foundation for appellant's contention. The truck, trailer and cargo were treated as a unit in the conduct of the salvage operation. The question raised appears to be a novel one upon which we can find no authority, but we are constrained to hold that this issue should have been raised by appellant's pleadings as a matter of defense and supported by evidence on trial of the case. We think it would be highly improper, unjust and inequitable, under the circumstances, to maintain the contention which is presented exclusively by way of argument. Accordingly, this argumentative defense is rejected.
The only issue which we think is properly before the court, by reason of Aetna's appeal as against the judgment in favor of Pelican, relates to the defense of lack of coverage, which issue must be determined upon the basis of an interpretation of the provisions of the policy. We set forth below the extracts from the policy contract which we think are in any degree relevant to the question presented:

"INSURING AGREEMENTS

* * * * * *
"Coverage ECollision or Upset:
To pay for direct and accidental loss of or damage to the automobile, hereinafter called Loss, caused by collision of the automobile with another object or by upset of the automobile."

* * * * * *
"Coverage JTowing and Labor Costs:
To pay for towing and labor costs necessitated by the disablement of the automobile, provided the labor is performed at the place of disablement."

* * * * * *
"7. General Average and Salvage Charges:
The Company with respect to such transportation insurance as is afforded by this policy shall pay any general average and salvage charges for which the named insured becomes legally liable."
* * * * * *
"CONDITIONS
"12. Named Insured's Duties When Loss OccursCoverages D, E, F, G, H, I and J: When loss occurs the named insured shall:
(a) protect the automobile, whether or not the loss is covered by this policy, and any further loss due to the named insured's failure to protect shall not be recoverable under this policy; reasonable expense incurred in affording such protection shall be deemed incurred at the company's request;"
* * * * * *
"17. No Benefit to BaileeCoverages D, E, F, G, H, I and J: The insurance afforded by this policy shall not enure directly or indirectly to the benefit of any carrier or bailee liable for loss to the automobile."
We think consideration of all of the above quoted provisions may be rejected with the exception of the Conditions set forth under 12(a), which covers the factual situation here involved and determines *771 the liability of the insured. We find nothing ambiguous, indefinite or uncertain in the plain obligation imposed upon the insured, in the event of loss under the Coverage (E) in the nature of collision or upset, to "protect the automobile, whether or not the loss is covered by this policy, * * *". The condition contains a penalty for the failure of the insured to take action to protect the automobile by excluding any recovery for loss due to such failure. The obligation of the insurer is as clearly set forth in the plain words "reasonable expense incurred in affording such protection shall be deemed incurred at the company's request;".
The meaning, intent and purpose of the words referred to appears so clear as to obviate necessity for discussion or explanation and is convincing and irrefutable proof of the insurer's obligation to pay the reasonable expenses of the protective operation. We have found no jurisprudence directly appropriate to the interpretation of the policy condition. However, there is authority which we consider analogous. The principle which has been applied under the contractual provisions of fire insurance policies is set forth in 5 Couch on Insurance (1929), 4468, Section 1221, as follows:
"§ 1221. Removal of imperiled goods.Although there has been some question as to the effect upon the insurer's liability of the removal of goods in case of threatened fire, the true rule seems to be that if the danger from fire to the insured goods, or to the building in which they are contained, is so imminent that a prudent uninsured person would, under the circumstances, hardly omit the precaution to remove his goods from the building, then the insured will also be justified in using such reasonable precaution to protect them from the impending or threatened peril, exercising in their removal such care as, under the circumstances, a prudent uninsured man could reasonably be assumed to have used, and that insurer is liable, within the limits of this rule, even though the building be not actually consumed or burned, for the loss, damage, and injury sustained by their removal, as well as for such expenses incurred in their removal as are reasonable under the circumstances."
Cited in support of the above rule are the Louisiana cases of Talamon v. Home & C. M. Ins. Co., 16 La.Ann. 426; Balestracci v. Firemen's Ins. Co., 34 La.Ann. 844.
The opinion in the Talamon case contains the following statements:
"From the evidence, it seems that no part of the stock in trade of plaintiff was actually consumed by fire; but that the damage was sustained, partly in efforts to remove the goods from the premises of plaintiff to a place more remote from the seat of conflagration, with the intention of saving them from threatened destruction by fire."
* * * * * *
"On the other hand, the counsel of defendants, who by an answer to the appeal filed, asked for an amendment of their judgment in their favor, contend that the plaintiff has no claim to indemnity for damages and expenses incurred in removing the goods, because, in so doing, he was simply complying with a condition imposed in the interest of the underwriter, and diminishing his liability."
The court held that plaintiff was entitled to recovery for damages and expenses incurred in connection with the removal of the insured property.
In the Balestracci case, in passing on a similar question, the opinion declared:
"The last and only serious defense is, that the removal of the goods was unnecessary. The policy contains two conditions which should properly be considered together, one exempting the *772 Company from liability for `damage caused by removal of property from a building, except it be proved that such removal was necessary to preserve the property;' another, that `the best endeavors of the assured shall be used in saving and protecting the property from damage at and after a fire,' under penalty of forfeiture of all claim under the policy.
"Between these two conditions it is apparent that the insured is placed in a dilemma in which he must exercise his discretion as to what his duty is. Although, in the present case, the plaintiff was so occupied with his family, who were in the house, that he was unable to give his attention to the goods, we must treat the removal precisely as if he had himself ordered it. The only question is, whether it was necessary, within the meaning of the condition of the policy. That question is not to be determined by the actual result, nor by the judgment of professional experts who, owing to the mistaken signals, did not reach the scene in time. It is to be determined by the circumstances of the case as they appeared to those who acted upon them. Considering the apparent imminence of the peril, the unusual delay in the arrival of the fire department, and the inflammable nature of plaintiff's stock, we think the circumstances were such as to make the removal apparently necessary for the double purpose of saving the goods and of controlling the fire by preventing its communication to such inflammable material." (Emphasis supplied)
The question is further discussed and the principle restated in Couch on Insurance 2d (1963), Volume 11, page 243, Section 42:505, et seq.
From other jurisdictions we find interpretations of the "duty to protect" clause which are appropriate. Southwestern Fire & Casualty Co. v. Kendrick (Tex.Civ.App., 1955), 281 S.W.2d 344; Parodi v. Universal Ins. Co. (1942), 128 N.J.L. 433, 26 A.2d 557; Chase Inv. Co. v. Mid-Western Cas. Co. (1942), 232 Iowa 73, 4 N.W.2d 863; Commercial Union Assur. Co. v. Planter's Co-op Association (1953), 207 Okl. 626, 252 P.2d 146; Smith v. Orion Ins. Co. (10th Cir., 1961), 298 F.2d 528.
In our opinion, the judgment appealed from to the extent that it awarded judgment in favor of Pelican Trucking Company, Inc. and against Aetna Insurance Company is correct, and, accordingly, should be affirmed.
We next consider the question of liability of the third party defendant-appellee, Insurance Company of North America as presented by the appeals of Pelican and Aetna.
North America's defense is predicated exclusively upon lack of coverage. It is the contention of appellants that coverage for the expense of the rescue and salvage operations is provided by the policy.
Pertinent to a consideration of these opposed contentions are the following specific provisions of the policy contract issued by Insurance Company of North America to Pelican Trucking Company, Inc. as the assured:
"1. COVERAGE. On the Assured's liability as a carrier for loss or damage caused directly by perils insured against hereunder, to lawful goods and merchandise consisting of oilfield supplies and equipment."
* * * * * *
"5. THIS POLICY INSURES
The liability of the Assured as a carrier for loss or damage directly caused by:
* * * * * *
(c) Overturning of the vehicle, collapse of bridges * * *."

*773 THIS POLICY DOES NOT INSURE
Any liability of the Assured as a carrier for loss or damage:
* * * * * *
(d) Caused by the neglect of the Assured to use all reasonable means to save and preserve the property at and after any disaster insured against;"
It is the position of appellee that there was no damage or loss to the oilfield equipment caused directly by the collapse of a bridge, which risk is covered by the policy under the provision 5 and (c) as above quoted.
From the standpoint of strict construction it must be conceded that the insured cargo which was being carried by Pelican did not suffer loss or damage directly caused by the collapse of the bridge. However, this strict construction is not conclusive as to the release of the insured's obligations. Under the factual circumstances of this case the conclusion is inescapable that the derrick and equipment being carried by Pelican would have suffered substantial damage, and in all probability complete loss, had it not been for the salvage operation undertaken by Pelican. These operations, by an expenditure of approximately $3,000.00, saved the insurer the liability for a claim of damage to a cargo valued at from $50,000.00 to $75,000.00.
Relevant to the further development of the insured's right of recovery for expenses of preserving the property following the collapse of the bridge, is the exclusion of provision 6(d) of the policy as above quoted. The effect of this exclusionary clause would have been to relieve the insurer of any liability if Pelican had not undertaken the salvage operation. In other words, if the cargo had not been preserved and rescued from substantial or complete destruction the defense of lack of coverage by reason of the insured's failure to comply with this requirement obviously would have been sufficient to exonerate the insurer from any liability. Under the circumstance, we are convinced that denial of the obligation of the insurer to bear the expense of salvage operations, without the performance of which liability is expressly excluded, would be contrary to the principles of general law, to every rule of reason and public policy and would impose an unjust and inequitable burden upon the insured without a reciprocal obligation upon the insurer.
In answer to this conclusion it might be argued that the exclusionary clause is included as a part of a contract which does not contain any specific contractual obligation on the insurer to bear the expense of rescue, salvage and preservation. The sole answer to this contention is that an insured is entitled to reimbursement of the expenses incurred in protecting his insurer against loss by application of general principles of law and equity. Reference to a similar conclusion is found in 5 Couch on Insurance 4469, Section 122, which is quoted as follows:
"When such a case exists, [involving the imminence of the peril, etc.] we think it the better opinion to hold that the underwriters are chargeable for the damage and expense of removing the goods, as this result seems most in accordance with reason, the analogies of the law, and public policy."
For the reasons assigned it is our conclusion that the judgment insofar as it rejected the demands of Pelican Trucking Company against the Insurance Company of North America should be annulled and reversed.
For the purpose of clarification, those portions of the judgment relating to the demand of Pelican Trucking Company, Inc., as third party plaintiff, and against Aetna Insurance Company and Insurance Company *774 of North America as third party defendants are recast to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of the third party plaintiff, Pelican Trucking Company, Inc., and against the third party defendants, Aetna Insurance Company of Hartford, Connecticut and Insurance Company of North America, in solido, in the full sum of Three Thousand One Hundred Seventeen and 89/100 ($3,117.89) Dollars, together with legal interest from the 3rd day of January, 1963, until paid, together with all costs of these proceedings in both courts.
It is further ordered that all rights of Pelican Trucking Company, Inc. to claim reasonable attorney's fees, incurred in these proceedings, against Aetna Insurance Company and the Insurance Company of North America are hereby reserved.
The judgment appealed from, affirmed in part and reversed in part, is therefore rendered as recast.